[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 314 
That the defendant had the right to procure its paper to be rediscounted for the use of the bank is well *Page 315 
settled, and is not now questioned by the defendant's counsel. (Marvine v. Hymers, 2 Kern., 223; Planters' Bank v.Sharp, 6 How. U.S.R., 301.) But the question presented is, whether the indorsement by Stokes, the defendant's cashier, in the manner in which it was made, is to be regarded as the personal indorsement of Stokes, or an indorsement in his official capacity, so as to bind the bank of which he was cashier. As a general proposition, it is undoubtedly true, that one who signs a writing as agent, trustee, or president, is regarded as merely describing himself, and hence is held to be personally liable. (Taft v. Brewster, 9 John., 334; Stone v. Wood, 7Cow., 453.) But when a writing is thus executed, with full authority from a principal, and is received by the payee as the obligation of the principal, the party on whose account it is executed is alone liable. In the case of White v. Skinner (13John., 307, 311), Skinner was held liable because he did not aver that he had authority from the company he assumed to bind. In Randall v. Van Vechten and others (19 John., 60), the defendants were described as a committee appointed by the corporation of the city of Albany, and they engaged to pay Randall for surveying and making maps. To their agreement so to do, they respectively signed their names and affixed their individual seals. Randall was, otherwise than by the agreement, informed that they acted in behalf of the corporation; and in the course of his services under the contract, he recognized the corporation as his principal. The defendants were held not to be liable. In Dubois v. The Delaware and Hudson Canal Company (4Wend., 285), the contract was signed "Maurice Wurts, agent for the Delaware and Hudson Canal Company." The plaintiff proceeded to work under the direction of the company's engineers, and afterwards sued the company, alleging their liability under the contract. Mr. Butler, who was their counsel, conceded, upon the authority of Randall v. Van Vechten, that the contract was well executed, and charged the defendants; and so the court decided — Justice MARCY delivering the opinion. In Brockway v.Allen (17 Wend., 40), the defendants gave their note, and signed it individually, adding, "Trustees of the *Page 316 
First Baptist Society of the village of Brockport." They pleaded that the society was indebted to Brockway for brick and other materials furnished, and that on account of such indebtedness they made the note. The court were of opinion that the plaintiff must have known that the debt was a corporate one, and that they made the note as the representatives of the corporation; and held that they were not liable. The principle decided by these cases is not in harmony with the decision in Hill v. Bannister (8Cow., 31). There the defendants gave their note, with the addition of "Trustees of Union Religious Society, Phelps;" and the defendants proved that it was given to a creditor of the society for a debt due from it. The cases to which I have referred have, nevertheless, been followed by the Supreme Court of this State, since the reörganization of our judicial system, and the principle settled by them fully affirmed by this court. In Hicks v. Hinde and others, (9 Barb., 528), Hinde made his draft, adding to his signature, "agent," on Beardsley in favor of Hicks. Beardsley accepted it, but failing to pay, it was protested, and a suit brought upon it by Hicks against Hinde and Beardsley. On the trial it was proved that Beardsley had a factory in charge of Hinde as his agent, and that he was in debt to Hicks for rent, and authorized Hinde to draw upon him for the rent due, for which purpose the draft in question was made; and it was held that Hinde was not liable. The same question was subsequently presented to this court in Babcock v. Beman (1Kern., 200). The defendant Beman had indorsed a note, adding to his signature, "treasurer," and was sued upon it. In his answer he alleged that he was the treasurer of the Union Manufacturing Company at Raritan, a corporation created under the laws of New Jersey, and as such had authority to receive the note and to indorse it to the plaintiff, of which the plaintiff had notice, and that it was indorsed by him and received by the plaintiff on account of a debt due from the company to him. Upon demurrer to the answer, the defendant had judgment. We were referred on the argument to the cases of Moss v. Livingston (4 Comst.,
208), and De Witt v. Walton (5 Seld., 571), as being so inconsistent *Page 317 
with the one to which I have last referred, that the one or the other must necessarily be overruled. It will be found, by a little attention to these two cases, that they are in no respect in conflict with Babcock v. Beman. In the case of Moss v.Livingston, Morrell was the agent of a corporation known by the name of the Rosendale Manufacturing Company, and one Ellett was also an agent of the same company, and was their creditor for services rendered by him. To pay this indebtedness, Morrell drew in Ellett's favor upon Livingston, adding to Livingston's address, "President, Rosendale Manufacturing Company." This draft was accepted by Livingston, who added the same words to his signature. The bill thus drawn and accepted was transferred to the plaintiff Moss, for a valuable consideration, and upon a suit upon it by him against Livingston, the latter was adjudged to be liable. Although Moss, the holder of the bill, had been an agent of the same company, it did not appear that he knew who its officers were, much less that he had any knowledge that the bill was drawn, accepted and received by Ellett to pay a debt due him. Nor did it appear that Morrell was authorized to draw, or Livingston to accept, on the company's account. In these two essential respects, this case differs from the case of Babcock
v. Beman and the principle which that case affirms.
In the case of De Witt v. Walton, the latter was sued upon a note signed by one Hoyt, in which Hoyt promised to pay, and signed the note with the addition of "agent for the Churchman." It appeared, from the admissions of Walton, that he was the sole editor and proprietor of a newspaper called the Churchman, and that Hoyt was his agent for conducting its affairs, and upon being shown several notes signed by Hoyt, "agent of the executive committee of the Churchman," and one signed like the one in suit, he admitted that Hoyt was his agent for conducting the affairs of the Churchman, and that he, Walton, was personally responsible for their payment. No admission was shown to have been made as to the note in suit, nor was any evidence given tending to show that Walton had ever dealt with the plaintiff or received the avails of the note, *Page 318 
or been benefited in the least degree by it. In this respect, this case also differs from Babcock v. Beman; and it could not, upon the authority of either of the cases to which I have referred, been ruled against Walton.
The case under consideration does not differ in principle from the cases of Randall v. Van Vechten, Dubois v. The Delawareand Hudson Canal Company, Brockway v. Allen, and Hicks v.Hinde, decided by the Supreme Court, the principle of which, as I have shown, has been affirmed by this court. In the case before us, the plaintiff, at the time of discounting the bill in question, was informed that Stokes was in fact the cashier of Patchin Bank, and was advised by its president who controlled it, owning himself nine-tenths of the stock, that he had directed Stokes to send it to the plaintiff for discount; and Stokes, as in ordinary cases of transacting business for the bank, dated the letter in which he inclosed the bill at "Patchin Bank of Buffalo," and subscribed his name to it as cashier. What else could, with any good reason, be inferred from his indorsement of the bill as cashier, inclosed as it was in a letter dated at Patchin Bank, subscribed as cashier, than that the whole business was done by him in his capacity as cashier of that bank? If the addition of cashier was a mere description of the person and not of the character in which he acted for that bank, the plaintiffs acquired no title to the bill as against the defendant. Suppose a controversy to have arisen between the Patchin Bank and the plaintiff as to the ownership of the bill, no one, I apprehend, would seriously insist that its indorsement by Stokes, with the addition of cashier, did not pass the title; clearly if it would be an official act binding upon the bank in the one case it is in the other, and if it was not intended to make the bank liable the indorsement should have been without recourse.
The same strictness is not required in the execution of commercial paper as between banks, that is in other respects between individuals. The indorsement by a cashier in his official capacity sufficiently shows that the indorsement was made in behalf of the bank. (Folger v. Chase, 18 Pick., 63, 67; *Page 319 Watervliet Bank v. White, 1 Denio, 608, 613; Wright v.Boyd, 3 Barb., 523, 528; Fleckner v. The United StatesBank, 8 Wheat., 338.) It having been shown that Stokes was the cashier of the defendant there is no necessity of prefixing the name of the corporation; it is a mere ceremony of expressing what the law implies, rendered unnecessary by a maxim of the law that "an expression in a contract which the law implies works nothing."
The charge of the judge was appropriate to the case and submitted every question to the jury which it was their province to determine, and no others. The verdict was clearly not against the evidence. If it was against the weight of evidence that was a matter for the Supreme Court upon a case.
The judgment should be affirmed.